**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| EMERALD CASINO, INC., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | Case No. 05 C 4077 |
| | ) | |
| AARON JAFFE, CHARLES GARDNER, EUGENE WINKLER, and JEANNETTE TAMAYO, | ) ) ) ) | |
| Defendants. | ) | |

## MEMORANDUM OPINION AND ORDER

MATTHEW F. KENNELLY, District Judge:

     Emerald Casino, Inc. holds a license to operate a riverboat casino in Illinois. It originally operated a casino in East Dubuque, but ceased operations in 1997. In 1999, the Illinois legislature enacted a statute which had the effect of allowing Emerald to apply to the Illinois Gaming Board (which regulates casino gambling) for relocation and renewal of its license upon obtaining the okay from the municipality where it wished to relocate. The statute also provided that licenses so renewed would be for a maximum of four years.

     Emerald obtained approval from the Village of Rosemont, and, in September 1999, it applied to the Board for renewal of its license and relocation to that municipality. In March 2001, the Board denied Emerald's request and issued a disciplinary complaint seeking to revoke Emerald's license on various grounds. Emerald filed suit in state court, seeking a writ of mandamus requiring the Board to approve the renewal and relocation application. The Board prevailed at the trial level in July 2002, but in December 2003, the decision was reversed on

appeal, with the Illinois Appellate Court holding that the 1999 statute required the Board to grant Emerald's application. The court noted in its decision that the statute did not prevent the Board from seeking revocation of Emerald's license.

In the interim, involuntary bankruptcy proceedings were filed against Emerald, and the case was eventually converted to a Chapter 11 reorganization. During the pendency of the case, Emerald entered into an agreement with the Board to stay the administrative proceedings on the revocation complaint for a limited period. That period ended in early 2003, and the Board announced that the revocation proceedings would resume. Emerald sought an injunction in the bankruptcy court on the grounds that resumption would violate the automatic stay provision of the Bankruptcy Code, but the bankruptcy judge denied the request, and the ruling was affirmed on appeal by another judge of this Court.

Emerald's plan of reorganization contemplated an auction of its license, and an entity called Isle of Capri was the successful bidder. The Illinois Attorney General raised various concerns about Rosemont and Isle of Capri. The Board entered into an agreement to stay the revocation proceeding for another limited period. In April 2005, however, the Board (which in the interim had several new members appointed) announced that the proceeding would resume, before a new ALJ, Abner Mikva.

In June 2005, the state court judge presiding over Emerald's mandamus action entered an order directing the Board to grant Emerald's application for relocation and renewal. The Board did so, but it renewed the license for four years from September 1999, the date of Emerald's application, and thus effectively granted an already-expired license. Emerald contended that this did not comply with the Appellate Court's mandate, but the trial judge disagreed. Emerald

2

appealed; the appeal is currently pending before the Illinois Appellate Court.

In the meantime, ALJ Mikva resumed the evidentiary hearing on the revocation proceeding. At the time the present suit was filed, the hearing was in progress but had not yet concluded. At present, as the Court understands it, the evidence has closed, and a ruling is likely to be forthcoming in the near future.

Emerald filed the present suit against the chairman, two members, and the interim administrator of the Board, seeking to enjoin the revocation proceeding. Emerald contends that the Board's pursuit of those proceedings violates its rights under the Equal Protection and Due Process Clauses of the Fourteenth Amendment as well as the First Amendment. Specifically, Emerald alleges that it has been treated differently than others similarly situated based on what it characterizes as "wholly illegitimate animus" toward Emerald based on its decision to relocate to Rosemont; that the Board's actions have been arbitrary and motivated by ill will and bias; and that the Board has acted in retaliation for Emerald's decision to associate itself with Rosemont.

Defendants have moved to dismiss Emerald's claims on a number of grounds, but for present purposes the Court need only address one of them: defendants' argument that the Court should abstain from intervening in the ongoing Gaming Board proceedings pursuant to *Younger v. Harris,* 401 U.S. 37 (1971). Under the *Younger* abstention doctrine, which is based on the principles of federalism and comity, federal courts must refrain from enjoining ongoing state judicial and quasi-judicial proceedings when important state interests are involved. Abstention is required when there is an ongoing state proceeding that is judicial in nature, implicates important state interests, and offers a fair opportunity for review of federal constitutional claims, absent extraordinary circumstances that make abstention appropriate. *See, e.g., Middlesex*

*County Ethics Comm. v. Garden State Bar Ass'n,* 457 U.S. 423, 432 (1982); *Green v. Benden,* 281 F.3d 661, 666 (7th Cir. 2002).

It is undisputed that the Gaming Board's revocation proceeding involving Emerald's license is judicial in nature and that it implicates an important state interest. Emerald argues, however, that the proceeding does not afford an adequate opportunity to assert its federal claims. Specifically, Emerald contends it has been stymied from offering before ALJ Mikva evidence to support its claims that the Board has demonstrated a bias toward Emerald and its planned association with the Village of Rosemont.

Emerald contends that ALJ Mikva has made it clear that he does not intend to address Emerald's constitutional claims, and that the Board cannot be expected to adjudicate fairly the claim it is biased. Judicial review of the ALJ's and the Board's determinations, however, may constitute an adequate opportunity for a litigant to raise federal constitutional challenges. *See Ohio Civil Rights Comm'n v. Dayton Christian Schools, Inc.,* 477 U.S. 619, 629 (1986); *Green,* 281 F.3d at 666; *Majors v. Engelbrecht,* 149 F.3d 709, 713 (7th Cir. 1998). Illinois law permits Emerald to bring its constitutional challenges along with its claim for administrative review. *See Stykel v. City of Freeport,* 318 Ill. App. 3d 839, 848-50, 742 N.E.2d 906, 914-15 (2001), *cited in Green,* 281 F.3d at 667; *Bd. of Educ. of Rich Twp. High School Dist. No. 227 v. Brown,* 311 Ill. App. 3d 478, 488, 724 N.E.2d 956, 964-65 (2000).[1] Emerald points out that what Illinois

---

[1] The reviewing trial court arguably has the authority to admit, in support of the constitutional claims, evidence that was not before the administrative agency. *Cf. Stykel,* 318 Ill App. 3d at 850, 742 N.E.2d at 915 (stating that trial court has "original jurisdiction" over constitutional claims). But even if this is not the case, there is no question that the reviewing court may remand the case to the agency for further proceedings if the record is insufficient to permit a ruling on the constitutional claims. *See Bd. of Educ. of Rich Twp. High Sch. Dist. No. 227,* 311 Ill. App. 3d at 488, 724 N.E.2d at 965.

permits is assertion of a § 1983 claim as part of a suit in conjunction with the claim for administrative review, *see Stykel,* 318 Ill. App. 3d at 850, 742 N.E.2d at 915, and it argues that it should be permitted to choose a federal rather than a state forum to present its § 1983 claims. *See* Emerald Resp. at 17. *Green* makes it clear, however, that the opportunity to assert a § 1983 claim *in state court* as part of an administrative review action constitutes an adequate opportunity that requires abstention under *Younger*. *Green,* 281 F.3d at 667.

ALJ Mikva has sustained objections to the admission of some, but not all, of the evidence offered by Emerald that is pertinent to its constitutional claims. Emerald argues that this shows it is not getting and will not get a fair opportunity to assert those claims in a state forum. But the materials submitted to this Court reflect that where the ALJ has excluded evidence, he has permitted Emerald to make a record via offers of proof. In addition, the record reflects that ALJ Mikva issued subpoenas to all but one witness on Emerald's list that it said it wanted to call. The one exception was defendant Jaffe, the Board's chairman. Emerald indicated that it wanted to question Jaffe at the hearing to determine the reasons for his decision to resume the revocation proceeding. ALJ Mikva denied the request, finding that Emerald had offered no evidence that would support a finding of bias on Jaffe's part and that he was aware of no basis to allow the head of an administrative agency to be questioned regarding the reasons for his decision. Even so, the ALJ granted Emerald's request to submit an offer of proof as to how Jaffe would testify. Emerald says this is not an adequate alternative, but on the present record the Court can make no such finding.

Under the circumstances, the Court concludes that Emerald will have an adequate opportunity to raise its constitutional claims as part of its claim for judicial review of the Board's

determination – assuming Emerald ends up losing at the administrative level, which is by no means clear. It is certainly possible that later developments will prove the Court wrong, but if Emerald is foreclosed from presenting its constitutional claims in state court, presumably it will then be able to refile its federal suit.[2] The hypothetical possibility that this might take place, however, is not a basis to decline abstention. *Cf. Pennzoil Co. v. Texaco, Inc.,* 481 U.S. 1, 15 (1987) (if litigant has not attempted to present federal claims in related state court proceedings, federal court should assume state procedures afford adequate remedy absent unambiguous evidence to the contrary); *Green,* 281 F.3d at 666 (same).

     Emerald also contends that extraordinary circumstances make abstention inappropriate. It argues that it has made a sufficient showing of bad faith and bias on the part of the Board. An exception to *Younger* exists when the state proceeding is conducted in bad faith or is motivated by a desire to harass. *See Younger,* 401 U.S. at 49, 54; *see also, e.g., Crenshaw v. Supreme Court of Ind.,* 170 F.3d 725, 729 (7th Cir. 1999). Emerald argues that if a state administrative proceeding is infected by bias, the litigant's right of state court judicial review, even if it is on a *de novo* basis, does not take the case outside this exception. But conclusory assertions of bias or harassment are insufficient to bring the bad faith exception into play. *See, e.g., Crenshaw,* 170 F.3d at 729; *Pincham v. Judicial Inquiry Bd.,* 872 F.2d 1341, 1349 (7th Cir. 1989). Rather, a party claiming that extraordinary circumstances make abstention inappropriate must demonstrate the existence of those circumstances. *Green,* 281 F.3d at 667; *see also, Ramsden v. AgriBank,*

---

[2] Emerald is cautioned, however, that it cannot withhold or soft-pedal its claims in the state forum and expect to assert them here later. A litigant cannot avoid *Younger* by withholding defenses from a state proceeding and then pursuing federal litigation once the state case ends. *See, e.g., Nelson v. Murphy,* 44 F.3d 497, 502 (7th Cir. 1995).

*FCB,* 214 F.3d 865, 871 (7th Cir. 2000).

Emerald's claim of bias and bad faith is not sufficiently supported to undercut the case for *Younger* abstention.  As defendants argue, most of the matters cited by Emerald in support of its bias / bad faith claim consist of actions by the Board that purportedly exceeded its authority under state law.  In particular, Emerald contends that Illinois law did not authorize the Board to investigate and institute a revocation proceeding against Emerald after it submitted its application for renewal of its license.  But the Illinois Appellate Court, in its 2003 ruling that Emerald was entitled to renewal, made it clear that the statute upon which it relied did not "prevent[ ] the Board from moving to revoke Emerald's license.  In fact, the Board began revocation proceedings on March 6, 2001 ....  [T]he legislature did not intend to tinker with the Board's authority to revoke Emerald's license ...."  *Emerald Casino, Inc. v. Ill. Gaming Bd.,* 346 Ill. App. 3d 18, 34, 803 N.E.2d 914, 926 (2003).  Emerald also cites the Board's grant of its renewal application retroactive to 1999, which as we previously noted effectively made the renewed license expire upon its grant.  But a state court judge – who Emerald does not hint was in any way biased – ruled that the Board's decision complied with the mandate of the Appellate Court.  Though that decision is on appeal, under the circumstances the Board's decision cannot be cited as evidence of bias or bad faith.

At oral argument on the present motion, Emerald's counsel also cited the lack of an explanation for the Board's decision to reopen the license revocation proceeding.  We briefly review the circumstances disclosed by the record submitted to the Court.  After the Board selected Isle of Capri following the previously-described auction for the Emerald license, the Illinois Attorney General raised objections.  Following the lack of a response by the Board, the

Attorney General prepared to resume the revocation proceeding and ultimately filed suit in state court seeking a determination of whether the Board could drop the proceeding without the Attorney General's consent. Around that same time, several members of the Board resigned; they were replaced with new members in March 2005. Shortly thereafter, in April 2005, the new Board decided to resume the revocation proceeding. These circumstances, at least those disclosed in the present record, do not support a finding of bad faith or bias on the part of the Board; rather, the explanation may be as simple as the fact that the Board now has new membership.

In a status report submitted pursuant to the Court's directive following oral argument on the motion to dismiss, Emerald appears to suggest that the fact that the ALJ permitted certain lines of questioning suggests a bias in the administrative proceeding that cannot be cured by judicial review. Specifically, Emerald cites the fact that the ALJ has permitted questioning about purported association of Rosemont's mayor with various persons allegedly involved in organized crime; contributors to the mayor's campaign; and various other matters concerning Rosemont and the mayor. Emerald also cites the ALJ's admission in evidence of a short excerpt from an FBI surveillance tape in which alleged organized crime members supposedly suggested involvement in a Rosemont-based casino.

The Court cannot conclude that the conduct of the proceedings to date gives rise to an inference of bias against Emerald or, as Emerald contends, an improper bias against its association with the Village of Rosemont. It would be inappropriate for the Court to make a determination regarding the veracity of the allegations about Rosemont advanced during the administrative hearing or how, if at all, those allegations bear on the matters to be decided by the

8

ALJ and the Board, and thus we do not do so. But we cannot say that the decision to admit evidence claimed to show an organized-crime connection to officials of the relatively small town where a casino operated under Emerald's license would be located is indicative of bias or bad faith on the part of the ALJ or the Board. Moreover, as noted by Emerald in its status report, the ALJ also admitted evidence offered by Emerald that it contends refutes the allegation of an organized-crime connection to Rosemont and its officials. Under the circumstances, the ALJ's decisions to admit or exclude certain evidence do not support the claim of bias or bad faith.

For these reasons, the Court concludes that Emerald has failed to show extraordinary circumstances that would make abstention inappropriate.

**Conclusion**

For the reasons stated above, the Court grants defendants' motion to dismiss plaintiff's claims on *Younger* abstention grounds [docket # 14-1]. Plaintiff's motion for a preliminary injunction is therefore denied [# 10-1]. The Clerk is directed to enter judgment dismissing this action. The status and ruling date of October 18, 2005 is vacated.

                                                 /s/ Matthew F. Kennelly
                                                  MATTHEW F. KENNELLY
                                                  United States District Judge

Date: October 17, 2005